## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2018, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Gregory L. Fumarolo<br>Fort Wayne, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Caroline G. Templeton<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David E. Bruner,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 3, 2018<br><br>Court of Appeals Case No.<br>18A-CR-122<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy Davis, Judge<br><br>The Honorable Samuel Keirns, Magistrate<br><br>Trial Court Cause No.<br>02D06-1210-FB-173 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, David E. Bruner (Bruner), appeals the trial court's revocation of his probation and imposition of his previously suspended sentence.

We affirm.

# ISSUE

Bruner presents one issue on appeal, which we restate as: Whether the trial court abused its discretion by ordering Bruner to serve his previously suspended sentence after finding that he violated the terms of his probation.

# FACTS AND PROCEDURAL HISTORY

On October 5, 2012, the State filed an Information, charging Bruner with Count I, dealing in a Schedule I, II, or III controlled substance, a Class B felony; and Count II, dealing in a substance represented to be a controlled substance, a Class D felony. On January 14, 2013, the State amended Count II to dealing in a look-a-like substance, a Class C felony. On February 4, 2013, Bruner pled guilty to Count I with the State dismissing Count II. During the sentencing hearing on March 5, 2013, the trial court sentenced Bruner to fifteen years, with nine years suspended and three years on Active Adult Probation.

After serving the executed portion of his sentence, Bruner was first released on December 19, 2014, into the reentry program at Allen County Community Corrections, which included 180 days of electronic monitoring. Although he

initially made good progress, he was terminated from the reentry program on June 13, 2016 due to repeated violations. During his time spent in the reentry program, Bruner violated the terms of his release ten times by testing positive for cocaine, alcohol, opiates, amphetamines, antidepressants, or selective serotonin reuptake inhibitors, as well as failing to pay fees. With each violation, the court addressed the violation and imposed a penalty, ranging from community service, substance abuse treatment, support meetings, a halfway house to short bouts of jail time. After Bruner was terminated from the program, the trial court modified his remaining nine year sentence to five years executed and four years suspended to probation upon finding that his violations of the reentry program's rules also were violations of his probation.

On July 24, 2017, Bruner was again released to the reentry program, after the trial court authorized his participation in the program. On August 21, 2017, he tested positive for marijuana, he missed a drug screen on August 22, 2017, and he admitted to the use of synthetic marijuana on August 28, 2017. As a result of these violations, Bruner was sentenced to three days at the Allen County Confinement Facility.

On October 31, 2017, the State filed a petition to revoke Bruner's placement in the reentry program, claiming that he had tested positive for marijuana and that a screen on October 26, 2017 was positive for cocaine. On November 6, 2017, Bruner's participation in the reentry program was again terminated and on December 19, 2017, the trial court conducted a hearing on Bruner's revocation of probation. During the hearing, Brunner testified that he has been trying to

overcome his addiction since he was seventeen years old but "it's very hard to []
say no to the product when it's waived in front of your face."  (Transcript p.
12).  He explained that when he was convalescing from a hip replacement he
complained of pain to his friends, who are addicts too.  Because he was out of
pain medication, Bruner talked his friend into giving him some of his crack and
he "ended up hitting it."  (Tr. p. 15).  He requested the trial court to place him
on probation because he needed another surgery for his hip and he needed "the
rehabilitation access that the Fort Wayne orthopedics has in order to
rehabilitate [himself] properly."  (Tr. p. 17).  Nevertheless, the trial court found
that it "ha[d] no other choice but to send [him] back to finish that sentence" and
revoked the entirety of Bruner's four-year suspended sentence.  (Tr. p. 27).  In
sentencing Bruner, the trial court noted that, after the first violations rather than
file a petition, Bruner's case manager tried to get Bruner into treatment through
the reentry program.  The case manager also helped him obtain health
insurance and set up an appointment with an orthopedic surgeon to address his
hip problems.  The trial court also noted that Bruner smoked cigarettes while at
the hospital following hip surgery.  The trial court found that Bruner had
received every available service but had failed to "do any of the work" and that
"putting [him] back on probation [] ma[de] no sense whatsoever."  (Tr. p. 26).
As a result, the trial court revoked the entirety of Bruner's suspended sentence.

[8]     Bruner now appeals.  Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[9] Bruner contends that the trial court abused its discretion by ordering him to serve his entire previously suspended sentence after revoking his probation. We review a trial court's decision to revoke probation and a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion. *Abernathy v. State*, 852 N.E.2d 1016 (Ind. Ct. App. 2006). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* When reviewing a trial court's decision to order a defendant's previously suspended sentence to be executed after revoking probation, we will not review the propriety of the original sentence. *Id.*

[10] Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Brabandt v. State*, 797 N.E.2d 855, 860 (Ind. Ct. App. 2003). There restrictions are designed to ensure that probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community. *Id.* As we have noted on numerous occasions, a defendant is not entitled to serve his sentence in a probation program; rather, such placement is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Strowmatt v. State*, 779 N.E.2d 971, 976 (Ind. Ct. App. 2002).

[11] Generally speaking, as long as the trial court follows the procedures outlined in Ind. Code § 35-38-2-3, the trial court may properly order execution of a

suspended sentence. *Crump v. State*, 740 N.E.2d 564, 573 (Ind. Ct. App. 2000), *trans. denied*. This statute provides that:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

I.C. § 35-38-2-3(i). In the instant case, Bruner does not allege that the trial court improperly found him to be in violation of the terms of his probation; rather, Bruner posits that the trial court abused its discretion by revoking all of his previously suspended sentence. In support of his allegation, he claims that "given Bruner's long history of addiction, the staff at ReEntry had to have anticipated that relapse was a likely possibility. . . [T]he inquiry should have been why it was that Bruner had relapsed." (Appellant's Br. p. 14).

[12] Despite Bruner's contention, the reentry program and the trial court gave Bruner all possible opportunities to rehabilitate himself and to overcome his lifelong struggles with addiction. However, Bruner's conduct during his participation in both sessions of the reentry program indicate that he was not an

appropriate candidate for the trial court's exercise of "grace." *See Strowmatt*, 779 N.E.2d at 976. Bruner was given repeated chances to demonstrate to the trial court that he could refrain from using illegal drugs but failed to do so. The trial court attempted rehabilitation in the form of substance abuse treatment, support meetings, a halfway house, electronic monitoring and short bouts of incarceration during his repeated probation violations, all to no avail. In every instance, Bruner's conduct displayed an unwillingness to comply with the terms of probation and a profound disrespect for the rule of law. Accordingly, because of Bruner's flagrant and repeated violations of probation, the trial court did not abuse its discretion by ordering him to serve the entirety of the sentence.

# CONCLUSION

[13] Based on the foregoing, we hold that the trial court properly imposed Bruner's previously suspended sentence after revoking his probation.

[14] Affirmed.

[15] May, J. and Mathias, J. concur